Bowen, J.
The suit below was on the following note :
*544, 545 “Cincinnati, Nov. 20, 1854.
544] “ Three months after date, I promise to pay to the order *of Samuel West, one hundred and fifty dollars, value received.
(Signed,) “Joseph B. Babcock.”
Indorsed: “ Samuel West.”.
The note was discounted by the defendant, and proceeds paid toBabcock, the maker. It was afterward left at the Union Bank for collection. Notice was sent by the bank to Babcock, some time-before it matured, that this note would fall due on the 23d of February, 1855, at said Union Bank.
Babcock resided in the eastern part of the city. He had no-place of business, exclusively his own. He was allowed to occupy the office of Mr. Harding, on Vine street, which was the place where he received business calls, and directed them to bo made. The business of Babcock, at the time, was that of a small vendor of pamphlets and periodicals, in the streets of the city. He had told persons that information left for him at Harding’s, would find him. The notary public states, that he went to the said office of Babcock, oh Vine street, between four and five o’clock p. m., on the-23d of February, and demanded payment of the note. He was told there were no funds there to pay, and that Mr. Babcock was out; -whereupon he protested the note for non-payment, and on the next day he put a notice in the post-office for West, the indorser, directed to him at Milford, Ohio. West received the notice on the 27th or 28th of February, post-marked Cincinnati, February 26. The notary says that he is confident that he mailed the notice to West before nine o’clock on the day after the protest, and that early business in Cincinnati, at that season of„the year, did not commence before seven or eight o’clock in the morning. Milford, is fifteen miles from Cincinnati, and it was shown that the mail was-545] closed, daily, for that place, *at five o’clock a. m., and that all letters put into the office after that hour, for Milford, would not go until the next mail; .that in this case the next 'mail day was Monday, the 26th of February. Sunday, the 25th, intervened, when there was no mail.
West was an accommodation indorser for Babcock.
The cause was submitted to the court below as to West, and a judgment found for the plaintiff, when the defendant moved the court to grant him a new trial, which motion was refused, and a *546 bill of exceptions was tendered and allowed. Judgment was taken by default against Babcock.
Two points are relied on by the plaintiff in error to reverse the proceedings of the Superior Court.
1. That no such demand of payment was made of Babcock, the maker, as the case required.
2. That there was no legal notice of demand and non-payment served on West, the indorser.
1. This note was deposited with a bank for collection, and, according to the usage of bankers in Cincinnati, Babcock was personally notified of the place where, and of the time when the paper, would become due. Although no place of payment is designated in the note, yet as the maker and holder resided in Cincinnati, it was not unreasonable to require payment of it to be made at one of the banking-houses of the city. It was the manifest duty of Babcock to have taken up the note at the Union Bank, in compliance with the notice which he received for that purpose. But having failed to do that, the notary public called at his place of receiving customers, and formally demanded payment. It is said that the demand ought to have been made at his family residence, and could not be made elsewhere, as he had no well-established business office. It seems that he occupied a room at Harding’s, where he ^directed calls to be made, and where he received them, By [546 his own acts and declarations he authorized this place to be known as his office for transacting business. He apprised the public that he could be found there, that “ word left there would find him.” He claimed no other business location. He gave no directions or authority for calling on him, for business purposes, at, his residence. His desire was to have an office for doing business where he might conveniently and with certainty be found, and a selection of such place he accordingly made at Mr. Harding’s, where he was sought by the notary public, but, when applied for, happened to be out. The object of the visit, however, was fully explained to those who 'were found in the office. We are satisfied that reasonable diligence in this case was used by the holder of the note to obtain payment from Babcock, and that the claim that no demand of payment was ■made of him is not well founded.
2. Was West, the indorser, legally notified of the non-payment of the note? Ho lived fifteen miles from the city, and was entitled to have a notice put into the post office as early as the next day after *547 protest, directed to him. This, the notary public says, was done. The duty of the holder of the note was terminated when he caused the notice to be seasonably deposited in the post-office. The mail for Milford, where defendant resided, was closed at five o’clock a. m. By that regulation, a letter mailed in business hours might be delayed one or two days in going to Milford, and still the notice be sufficient. In this case the protest was made on the 23d of the month; the notice was deposited in the post-office on the 24th by nine o’clock a. m. ; the 25th was Sunday, and the letter was not, in consequence, post-marked and forwarded until the 26th. On the 547] part of the holder of the note, we see in this no delay *or omission of duty which should defeat a recovery against the indorsers. See Lawson and Covode v. Farmers’ Bank of Salem, 1 Ohio St. 206.
The judgment of the Superior Court is affirmed.
Bartley, C. L, and Swan, Brinkerhoee, and Scott, JJ., concurred.